An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-48

Filed 2 July 2025

Forsyth County, Nos. 23 JT 000011-330 & 23 JT 000012-330

IN THE MATTER OF:
A.R. and A.R.

Appeal by Respondent from judgment entered 25 September 2024 by Judge Thomas Davis in Forsyth County District Court. Heard in the Court of Appeals 10 June 2025.

> *Senges Noda, Attorneys at Law, by Attorney Jason Senges, for Respondent– Appellant Mother.*

> *Forsyth County, by Deputy County Attorney Theresa A. Boucher, for Petitioner– Appellee Forsyth County Department of Social Services.*

> *New South Law Firm, by Attorney Valerie F. Bateman, for Appellee–Petitioner Guardian ad litem.*

MURRY, Judge.

Nelisha Robinson ("Respondent" or "Mother") appeals from the trial court's denial of her motion to dismiss and its 25 September 2024 order terminating her parental rights. For the following reasons, this Court affirms the trial court.

## I.    Background

Mother has two minor children, Aurora and Axel.[1] On 11 January 2023, the Forsyth County Department of Social Services (FCDSS) filed juvenile petitions alleging the neglect of Aurora and the abuse and neglect of Axel. That same day, the trial court entered a nonsecure custody order finding that Mother exposed both children "to a substantial risk of physical injury" by "creat[ing] conditions likely to cause injury or abuse" and by "fail[ing] to provide . . . adequate supervision or protection." It then placed Aurora and Axel in FCDSS custody, with the additional finding that Axel had "suffered a physical injury, sexual abuse, or serious emotional damage." (Citing N.C.G.S. § 7B-101(1)(e) (2023).)

On 15 May 2023, the trial court adjudicated Aurora as a neglected juvenile and Axel as an abused and neglected juvenile. *See* N.C.G.S. § 7B-101(15) (2023) (defining "neglected juvenile"); *id.* § 7B-101(1) (defining "abused juvenile"). Immediately after the adjudication hearing, the trial court conducted a disposition hearing where it placed the children in the legal custody of FCDSS, allowing Mother visitation once a week for two hours, and determined a case plan for the children's reunification with Mother. This plan required Mother to:

    a. Complete a parenting capacity and psychological evaluation ("PC/PE") and follow the recommendations;
    b. Complete a parenting class at Parenting Path and demonstrate learned skills at her visits with the minor children;

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor children by pseudonyms to protect their identities. *See* N.C. R. App. P. 42(b).

    c. Complete a mental health assessment and follow the recommendations;

    d. Complete a substance abuse assessment and follow the recommendations;

    e. Complete all drug screens requested by FCDSS;

    f. Consistently visit with her children; and

    g. Demonstrate her ability to meet the minor children's basic and therapeutic needs.

(Citation modified.) After the first permanency-planning hearing on 14 August 2023, the trial court ordered that the children remain in FCDSS discretionary custody. The trial court also ordered the primary plan of reunification with Mother and the secondary plan of adoption. After a second permanency-planning hearing on 24 January 2024, the trial court changed the children's primary permanent plan to adoption and ordered FCDSS to file a petition to terminate Mother's parental rights within 60 days.

On 29 May 2024, FCDSS filed a termination petition, which the trial court heard on 16 August 2024.[2] FCDSS presented evidence through multiple witnesses, including the social worker, guardian *ad litem*, and the children's current foster (and prospective adoptive) families. At the close of FCDSS's evidence, Mother moved to dismiss the termination petition (Motion), claiming that none of the "alleged . . . grounds for terminating her [parental] rights" had been "proven by clear, cogent, and

---

[2] FCDSS's petition also sought termination of Aurora and Axel's biological fathers' parental rights. Both biological fathers relinquished their parental rights and FCDSS voluntarily dismissed those cases. Neither is a party to this action.

convincing evidence." After the trial court denied Mother's Motion, she presented evidence through her own testimony.

On 25 September 2024, the trial court entered a joint adjudication and disposition order finding that FCDSS had proven two grounds for termination under N.C.G.S. § 7B-1111(a) by clear, cogent, and convincing evidence that Mother (1) neglected the children, posing "a high probability of repeated neglect" should they be returned to her care, and (2) left both children in FCDSS custody for more than 12 months "without making reasonable progress under the circumstances to correct the conditions that led to their removal from her care."

The disposition portion of the order included the following findings:

11. [Mother] acknowledged in her testimony that the minor children have suffered trauma, but she believes all the trauma they have suffered occurred after they came into the care of the FCDSS. [She] is still in denial as to how her substance abuse, untreated mental health, and lack of supervision of her children has impacted the children and brought them into the care of the FCDSS.

12. [Mother] described her lack of progress on her 2023 case plan as her being "nonchalant," alleging that she stopped being nonchalant in working [on] her case plan sometime in 2024. [Mother] was nonchalant about being nonchalant towards getting her children back in her care.

13. [Mother] offered at-times bizarre testimony during the hearing, at one point testifying that if Axel had been in FCDSS's custody most of his life as alleged, then he would be a grown man now.

14. Due to [Mother's] continuing cocaine use, noncompliance with either her mental health or substance-abuse treatment plans, and continued denial of how her actions have affected her children, she still presents a danger to them should her rights not be terminated and the minor children be returned to her care. The circumstances

that led to the minor children's removal are still there.

(Citation modified.) Based on these findings, the trial court concluded that "it [was] in the best interest of [Axel and Aurora] that the parental rights of [Mother] be terminated" and granted FCDSS' petition. Mother gave timely notice of appeal on 22 October 2024.

## II.    Jurisdiction

This Court has jurisdiction to hear Respondent's appeal of her termination of parental rights in Axel and Aurora because the order "change[d] legal custody," N.C.G.S. § 7B-1001(a)(4) (2023), of her son with her as the "nonprevailing party," *id.* § 7B-1002(4).

## III.    Analysis

### A. Mother's Motion

On appeal, Mother contends that "the trial court applied the incorrect standards for [her] [Motion] at the close of [FCDSS's] evidence thereby creating a fundamental unfairness in the procedures." Because termination-of-parental-rights proceedings (TPRs) do not implicate the constitutional right to a jury trial, they are nonjury bench trials. *See In re Clark*, 303 N.C. 592 (1981). These proceedings are "governed by the Rules of Civil Procedure, unless otherwise provided." *In re Bullabough*, 89 N.C. App. 171, 179 (1988); *see In re S.D.W.*, 187 N.C. App. 416, 421 (2007) ("Where the juvenile code does not identify a specific procedure to be used in termination cases, the Rules of Civil Procedure will fill the procedural gaps that

Article 11 leaves open.").

North Carolina Civil Procedure Rule 41(b) allows a respondent to move for dismissal at the close of the petitioner's evidence "if the petitioner has shown no right to relief or . . . has made out a colorable claim but the court nevertheless determines as the trier of fact that the respondent is entitled to judgment on the merits." *In re Blackburn*, 142 N.C. App. 607, 610 (2001). Motions to dismiss require "show[ing] that the [petitioner] had 'no right to relief' upon the facts and law." *Carolina Mulching Co. v. Raleigh-Wilmington Invs. II, LLC*, 378 N.C. 100, 107 (2021) (quoting N.C. R. Civ. P. 41(b)). Thus, in a TPR proceeding, the petitioner must "colorabl[y] claim" at least one of the enumerated grounds for termination under N.C.G.S. § 7B-1111. These grounds include, *inter alia*, that the parent (1) "has abused or neglected the juvenile[s]" as set out in N.C.G.S. § 7B-101 or (2) "willfully left the juvenile[s] in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile[s]." *Id.* § 7B-1111(a)(1)–(2).

But our appellate courts have "repeatedly recognized that if a [respondent] presents evidence after making a Rule 41(b) motion to dismiss, the 'defendant waive[s] [the] right to appeal the denial of [the] motion to dismiss made at the close of [the] plaintiff's evidence." *Karger v. Wood*, 174 N.C. App. 703, 706 (2005); *see*

*Jarrett v. Jarrett*, 249 N.C. App. 269, 283–84 (2016) (holding defendant "waived his right to appeal from the denial of the motion" because he "presented evidence after its deni[al]"). Here, Mother presented evidence through her own testimony after the trial court denied her Motion. By doing so, she waived her right to appeal that denial. *See Karger*, 174 N.C. App. at 706. Thus, we do not address any of Mother's arguments relating to the trial court's denial of her Motion.

## B. Challenged Dispositional Findings

Mother specifically challenges dispositional findings #11–#14. Termination proceedings are "a two-stage process," *In re L.H.,* 210 N.C. App. 355, 362 (2011), and "consist[ ] of an adjudicatory stage and a dispositional stage." *In re D.C.*, 378 N.C. 556, 559 (2021). At the first "adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under" N.C.G.S. § 7B-1111(a). *Id.* If the petitioner meets its burden, the matter moves to the dispositional stage where the trial court "determine[s] whether terminating the parent's rights is in the [children's] best interest." *In re S.M.,* 380 N.C. 788, 790 (2022). In making this determination, it must consider the "juvenile[s'] [ages]," their "likelihood of adoption," whether termination of parental rights would help to "accomplish[ ] . . . the[ir] permanent plan," the parent-child "bond," and the "quality of the relationship between the juvenile[s] and the proposed . . . guardian." N.C.G.S. § 7B-1110(a)(1)–(6).

At the dispositional phase, we review the trial court's assessment of a juvenile's best interest "solely for abuse of discretion." *In re S.M.*, 375 N.C. 673, 688 (2020). The trial court abuses its discretion when its ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107 (2015). A trial court's "dispositional findings . . . bind[ ] [us] on appeal if supported by *any* competent evidence." *In re J.S.*, 374 N.C. 811, 822 (2020). (Emphasis added.) *See Stephens v. Stephens*, 213 N.C. App. 495, 503 (2011) ("The trial court's position offers the most candid weighing of the evidence, thus its findings as to the disposition of respondents' parental rights 'cannot be upset' if the record contains any competent evidence supporting such a disposition.").

In the case *sub judice*, Mother challenges dispositional findings #11–#14 but offers no argument in support of her factual challenges other than her previously waived argument regarding the denial of her Motion. Our appellate rules provide that an issue "in support of which no reason or argument is stated[ ] will be taken as abandoned." N.C. R. App. P. 28(b)(6). We have "routinely held an argument to be abandoned where an appellant presents argument without such authority and in contravention of the rule." *Groseclose v. Groseclose*, 291 N.C. App. 409, 430 (2023). Therefore, we deem Mother's challenges abandoned.

Here, the trial court documented, *inter alia*, Aurora and Axel's young ages, their respective fathers' relinquishment of parental rights, the hindrance to their

"primary permanent plan" of adoption should Mother's parental rights remain intact, each child's "strong bond with their current placement providers, who are prospective adoptive homes," and the "high[ ] likel[ihood]" of adoption at their current placements. The trial court also recognized other "relevant considerations," N.C.G.S. § 7B-1110(a)(6), such the children's "negative behaviors in the hours and days" following their visits with Mother, Mother's "acknowledge[ment] that the minor children have suffered trauma," Mother's "nonchalan[ce] towards getting her children back in her care," and Axel's lack of "[ ]clear . . . know[ledge]" that Mother is his mother. Based on these considerations, this Court holds that the trial court did not abuse its discretion by terminating Mother's parental rights to Aurora and Axel.

## IV.  Conclusion

For the reasons discussed above, this Court affirms the trial court's 25 September 2024 order terminating Mother's parental rights to Aurora and Axel.

AFFIRMED.

Chief Judge DILLON and Judge CARPENTER concur.

Report per Rule 30(e).